UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW ACTON and PETER MARCHELOS, individually, and on behalf of all other similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>INTELLECTUAL CAPITAL MANAGEMENT, INC. d/b/a SMS MASTERMINDS and SPENDSMART NETWORKS, INC.<br><br>Defendants. | Case No.<br><br>**ECF CASE**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227**<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Matthew Acton and Peter Marchelos ("Plaintiffs"), on their own behalf and on behalf of all other similarly situated persons, by and through their counsel, bring the following complaint against Defendants Intellectual Capital Management, Inc., d/b/a SMS Masterminds ("SMS Masterminds") and Spendsmart Networks, Inc. ("Spendsmart") to obtain all damages, injunctive relief, attorney fees, costs, and other remedies which Plaintiffs are entitled to recover under law and equity.  Plaintiffs, for their class action complaint, allege as follows upon personal knowledge as to themselves and their acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

### NATURE OF THE CASE

1. Defendant SMS Masterminds operates a mobile marketing and messaging service throughout the United States and the world.  SMS Masterminds delivers marketing and advertising services to clients through text messaging, mobile web and applications, and the Internet.

2. Muscle Maker Franchising, LLC (hereinafter, "Muscle Maker") owns and operates a chain of fast-casual restaurants across the United States.

3. In an attempt to market and promote its restaurants, Muscle Maker engaged SMS Masterminds to engage in an especially invasive form of marketing: the transmission of unauthorized advertisements in the form of "text message" calls to the cellular telephones of consumers throughout the

nation in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA")

4. By effectuating these unauthorized text message calls, Defendant has caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies wireless spam, but also because consumers frequently have to pay their cell phone service providers for the receipt of such wireless spam.

5. In order to redress these injuries, Plaintiffs, on behalf of themselves and a nationwide class of similarly situated individuals, bring this suit under the TCPA, which prohibits unsolicited voice and text calls to cell phones.

6. On behalf of the class, Plaintiffs seek an injunction requiring Defendants to cease all wireless spam activities to them and the proposed class as well as an award of actual and statutory damages to the class members, together with costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as the action arises under the TCPA. This Court has personal jurisdiction over Defendants because Defendants conduct significant business transactions in this District, and solicit consumers in this District.

8. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims in this action occurred in this District, Defendants conduct significant business transactions in this District and solicit consumers in this District, and Plaintiffs reside within Nassau County.

## PARTIES

9. Plaintiff Matthew Acton is an individual domiciled and residing in Nassau County, New York.

10. Plaintiff Peter Marchelos is an individual domiciled and residing in Nassau County, New York.

11. Defendant SMS Masterminds is a corporation incorporated and existing under the laws of the State of Nevada with its principal place of business located at 805 Aerovista Park, Suite 205, San Luis Obispo, California. SMS Masterminds conducts business throughout this District, the State of New York, and the United States.

12. Defendant Spendsmart is a corporation incorporated and existing under the laws of the State

of California with its principal place of business located at 805 Aerovista Park, Suite 205, San Luis Obispo, California. Spendsmart conducts business throughout this District, the State of New York, and the United States.

13. This Court has personal jurisdiction over Defendants under N.Y.C.P.L.R. §§301 and 302 as a result of the following during the relevant time period:

14. Defendants continuously, regularly, permanently, purposively, and systematically engaged in a course of business, and have otherwise been present, within New York (availing itself of the legal privileges of doing business within New York) by, *inter alia*, maintaining, possessing, and operating through licensees selling its text-message marketing services within New York to New York residents and businesses; and entering into contracts with individuals and businesses within New York to provide its services in New York.

15. The statutory violations alleged herein involving sending unsolicited text messages in New York have arisen directly from, and are substantially related to, Defendants' transacting of business and contracting within New York, namely, *inter alia*, contracting with licensees to promote New York businesses through its text-message marketing campaigns.

16. Defendants have committed the statutory violations alleged herein involving sending unsolicited text messages to people either within New York or outside of New York, but in either case have caused such people to suffer harm, and reasonably should have expected them to suffer such harm, within New York; and Defendants have regularly done and solicited business within New York and derived substantial revenue from goods used and consumed, and served rendered, within New York; and derived substantial revenue from interstate commerce.

**FACTUAL ALLEGATIONS**

17. In recent years, marketers who often have felt restricted by federal laws limiting solicitation by telephone, facsimile machine, and e-mail have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

18. One of the newest types such bulk marketing is to advertise through Short Message Services, commonly known as text messages. The term "Short Message Service," or "text message" (hereinafter "SMS"

3

or "SMS message") describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and/or receive short text messages, usually limited to 160 characters.

19.     An SMS message is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

20.     Unlike more conventional advertisements, SMS message calls, and particularly wireless spam, can actually cost their recipients money, because cell phone users must frequently pay their respective wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

21.     According to a study conducted by the Pew Research Center, "69% of [cell phone owners] who are texters say they get unwanted spam or text messages. Of those texters, 25% face problems with spam/unwanted texts at least weekly." Jan Lauren Boyles, *Mobile Phone Problems* (Aug. 2, 2012), http://pewinternet.org/Reports/2012/Mobile-phone-problems/Main-findings.aspx (last visited May 22, 2015).

22.     Beginning at least as early as 2013, Defendants sent and continued to send text messages to Plaintiffs' and the Class members' cell phones without consent.

23.     Also, on or around November 17, 2013, Defendants made (or caused to be made) a promotional text message call to Plaintiff Acton's cellular telephone.

24.     The "from" field of the text message was identified as "802-58," which is an abbreviated telephone number known as SMS short code. The body of the text message call read:

> MUSCLE MAKER GRILL AMITYVILLE $5 Wrap Sunday All Day! NFL Party w 10 Wraps & 1 16oz side $59.99 or 20 Wraps & 2 16 oz sides $99.99 Check-In – MyNYRewards.com

25.     Plaintiff Acton has not joined Muscle Maker's Loyalty Rewards Club or authorized SMS Masterminds, Spendsmart, Muscle Maker, or MyNYRewards to send text messages to him.

26.     Defendants continued to send additional promotional text messages to Plaintiff Acton's

4

cellular phone. For example, from approximately November 2013 to the present, Defendants made the following text message calls respectively to Plaintiff Acton's cellular telephone:

> Announcing YO LUV IT, Self Serve Yogurt Inside MMG ALL WKND Buy Any Size Yogurt Get a Piece of Cake from The Famous CAKE BOSS Free-Starts NOW -  MyNYRewards.com

> Let MUSCLE MAKER GRILL Cater For You! 10 Wraps & 1 16oz side $59.99 or 20 Wraps & 1 16oz sides $99.99 Pick-Up/Delivery Call 631-464-4277 - MyNYRewards.com.

> NFL Playoff Promo@MUSCLE MAKER GRILL AMITYVILLE-10 Wraps & 1 16oz side$59.99 or 20 Wraps & 2 16oz sides $99.99 Pick-Up/Delivery 631-464-4277 - MyNYRewards.com.

> FREE Cup of Soup TODAY ONLY@MUSCLE MAKER GRILL of Amityville w Any Order Over $10! Check-In&Show/Mention Text  -EAT HEALTHY- 631-464-4277 - MyNYRewards.com.

> MON &TUES@ MUSCLE MAKER GRILL of AMITYVILLE from 3-6pm-Buy 1 Wrap, get 1 FREE!(of = or lessor value,certain wraps apply)-Check-In/Show text - MyNYRewards.com.

> $5 Wraps All Day@MUSCLE MAKER GRILL of AMITYVILLE- NFL Party w 10 Wraps & 1 16oz side $59.99 or 20 Wraps & 2 16oz sides $99.99 Check-In@kiosk - MyNYRewards.com.

27. On or around October 29, 2014, Defendants made (or caused to be made) a promotional text message call to Plaintiff Marchelos' cellular telephone.

28. The "from" field of the text message was identified cryptically as "802-58," which is an abbreviated telephone number known as SMS short code. The body of the text message call read:

> We Miss You Here at Muscle Maker Grill of Amityville so Please Come In For A FREE Fruit Smoothie. Please Check In & Show text. ENJOY!

5

29. But Plaintiff Marchelos had not joined Muscle Maker's Loyalty Rewards Club or authorized Muscle Maker, SMS Masterminds, Spendsmart, or MyNYRewards.com to send text messages to him.

30. Defendants store cellular phone numbers that are input from a "kiosk" located in its customer's business locations.

31. Defendants do not know who inputs the cellular phone numbers into its kiosks.

32. Defendants do not know if the cellular phone number was input by the subscriber to the cellular phone number that was input into the kiosk.

33. Defendants do not know if the subscriber to the cell phone number has expressly consented to receive text messages before Defendants send him or her text messages as required by the TCPA.

34. Each promotional text message call sent by Defendants and received by Plaintiffs and the other putative Class members were substantially similar in that they all promoted Muscle Maker's products to recipients of such text message.

35. Defendants controlled the software program at issue, and maintained control over the manner and means by which such text messages were sent.

36. Defendants' software has the capacity to store cellular phone numbers.

37. Defendants' software has the capacity to generate cellular phone numbers randomly or in sequential order.

38. Defendants' software has the capacity to produce and dial cellular phone numbers from a list or database without human intervention.

39. Defendants' software has the capacity to automatically send text messages to thousands of cellular phone numbers within seconds.

40. Plaintiffs each maintain cellular service with a common cellular telephone provider and each maintains a cellular telephone number and have done so for all times relevant to this action. Plaintiffs' cellular telephones are equipped with the capability to allow the receipt of text messages. Plaintiffs are the subscribers of the cell phone numbers on which they received the text messages at issue in this case.

41. Consumers like Plaintiffs have no effective means to avoid the receipt of unsolicited SMS text messages. Receipt of each such text message invariably injures the property of the recipient and otherwise invades the privacy of the recipient.

42. Plaintiffs did not provide their cellular telephone numbers to Defendants or their agents for the purpose of joining a loyalty rewards program or to receive text messages. Nor did Plaintiffs provide authorization to or otherwise permit Defendants or their agents to store or use Plaintiffs' personal contact information for any purposes.

43. The SMS text messages sent to Plaintiffs are typical of messages sent to thousands of other consumers. The links in these messages were designed and intended by Defendants to connect Plaintiffs and consumers to websites which Muscle Maker owned or operated.

44. Like numerous other consumers, Plaintiffs were injured as a result of Defendants' actions above in ways including, but not limited to, the following: (1) Incurring cellular phone charges and/or reduction in cellular phone time or data capacity to receive the unsolicited text message from Defendants; (2) Invasion of privacy; (3) Aggravation and annoyance from having to retrieve or administer the unsolicited messages; and (4) Loss of use of the full capacities and capabilities, *e.g.,* electronic storage space, of their cellular telephone.

45. On information and belief, Defendants made these text message calls to Plaintiffs and the other putative Class members using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

46. Defendants sent the text messages at issue using an Automatic Telephone Dialing System, which sends thousands of text messages to cell phone numbers stored on Defendants' database without human intervention.

47. By the conduct detailed above, Defendants, directly and/or through their authorized agents, engaged in unlawful and otherwise wrongful marketing and advertising practices. These practices have damaged Plaintiffs and persons similarly situated. Defendants caused the transmission of unsolicited electronic commercial text messages to the cellular telephone numbers assigned to Plaintiffs and numerous other consumers.

48. Defendants' conduct above negatively affects the public interest. Defendants caused the

unsolicited transmission of numerous SMS text messages to numerous consumers throughout the United States and its territories, including the State of New York.

## CLASS ACTION ALLEGATIONS

49. **Class Definition:** Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3) on behalf of themselves and a class (the "Class") defined as follows:

> All persons in the United States who received one or more unauthorized text message calls from (or on behalf of) Defendants within the applicable statutory period.

50. Excluded from the Class are (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or its parents have a controlling interest and its current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) all persons who have previously had claims similar to those alleged herein finally adjudicated or who have released their claims against Defendants, and (5) the legal representatives, successors, or assigns of any such excluded person. Plaintiffs' motion for class certification is attached as Exhibit A.

51. **Numerosity:** The exact number of Class members is unknown and not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable as Defendants sent thousands of unsolicited text messages. On information and belief, Defendants have made unauthorized promotional text message calls to thousands of consumers who fall into the definition of the Class. Class members can be identified through Defendants' records.

52. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiffs and the other putative Class members, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether Defendants' conduct violates the TCPA;

(b) whether the equipment Defendants used to make the text message calls in question was an

8

automatic telephone dialing system as contemplated by the TCPA;

(c)     whether Class members are entitled to treble damages based on the willfulness of Defendants' conduct; and

(d)     whether Defendants should be enjoined from violating the TCPA in the future.

53.     **Typicality**: Plaintiffs' claims are typical of the claims of other members of the Class, in that Plaintiffs and the other Class members sustained damages arising out of Defendants' uniform wrongful conduct and unauthorized text message calls.  The questions referenced above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of Plaintiffs' claims.

54.     **Adequate Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Class, and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interest antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiffs.

55.     **Policies Generally Applicable to the Class:** This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply and affect members of the Class uniformly and Plaintiffs challenge of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.  Defendants have acted and failed to act on grounds generally applicable to Plaintiffs and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class.  The factual and legal basis of Defendants' liability to Plaintiffs and to the other members of the Class are the same, resulting in injury to the Plaintiffs and to all of the other members of the Class.  Plaintiffs and the other members of the Class have suffered similar harm and damages as a result of Defendants' unlawful and wrongful conduct.

56. **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## FIRST COUNT

### Violations of the Telephone Consumer Protection Act
### (On behalf of Plaintiffs and the Class)

57. Plaintiffs reassert and re-allege the allegations set forth in the above paragraphs as if the same were alleged herein this count.

58. Defendants made unauthorized commercial text message calls to the cellular telephone numbers of Plaintiffs and the other putative Class members using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

59. These text message calls were made *en masse* and without the prior express consent of the Plaintiffs and the other members of the putative Class.

60. Defendants have, therefore, violated 47 U.S.C. § 227(b)(l)(A)(iii). As a result of Defendants' illegal conduct, Plaintiffs and the other members of the putative Class suffered actual damages and, under section 227(b)(3)(B), are each entitled to, *inter alia,* a minimum of $500 in damages for each violation of such act.

61. Because Defendants' misconduct was willful and knowing, the Court should, pursuant to section 227(b)(3), treble the amount of statutory damages recoverable by the Plaintiffs and the other members of the putative Class.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, pray for the following relief:

(a) An order certifying the Class as defined above, appointing Plaintiff Acton and Plaintiff Marchelos as representatives of the Class, and appointing their counsel as Class Counsel;

(b) An award of actual and statutory damages;

(c) An injunction requiring Defendants to cease all unauthorized text message activities, and otherwise protecting the interests of Plaintiffs and the Class;

(d) An award of reasonable attorneys' fees and costs; and

(e) Such other and further relief that the Court deems reasonable and just.

## VIII. JURY DEMAND

Plaintiffs request a jury trial on all issues so triable.

July 8, 2015

Respectfully Submitted,

/s/ Erik H. Langeland
Erik H. Langeland
733 3rd Avenue, 15 Floor
New York, NY 10017
(212) 354-6270
(212) 898-9086 fax
elangeland@langelandlaw.com