# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK
## CENTRAL ISLIP COURTHOUSE

MATTHEW ACTON, individually, and on behalf of all other similarly situated persons,

Plaintiffs,

vs.

INTELLECTUAL CAPITAL MANAGEMENT, INC. D/B/A SMS MASTERMINDS and SPENDSMART NETWORKS, INC.,

Defendants.

Case No 2:15-cv-04004-JS-ARL

Honorable Joanna Seybert

**DEFENDANTS INTELLECTUAL CAPITAL MANAGEMENT, INC.'S AND SPENDSMART NETWORKS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY PROCEEDINGS**

BLANK ROME LLP
Harrison Brown (Admitted *pro hac vice*)
2029 Century Park East, 6th Floor
Los Angeles, CA 90067
Tel:    424.239.3400
Fax:    424.239.3434
Email: HBrown@BlankRome.com

Rither Alabre
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Tel:    212.885.5000
Fax:    212.885.5001
Email: RAlabre@BlankRome.com

*Attorneys for Defendants Intellectual Capital Management, Inc., d/b/a SMS Masterminds and Spendsmart Networks*

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................1

FACTS AND BACKGROUND INFORMATION .........................................................3

    A.    Plaintiff's Class Action Complaint .........................................................3

    B.    Defendants Served a Rule 68 Offer of Judgment on Plaintiff ..............4

    C.    Relevant Pending Litigation ....................................................................4

        1.    The Court Grants *Certiorari* in Three Appeals Poised to End this Case ................................................................................4

        2.    The 2015 TCPA Order and the Consolidated Appeal in the D.C. Circuit ...........................................................8

ARGUMENT ...................................................................................................................9

    A.    This Court has Authority to Grant Stays Pending Appellate Court Rulings ..........9

    B.    *Campbell-Ewald* Will Resolve the Mootness Issue ...............................10

        1.    The Facts of This Case are Identical to *Campbell-Ewald* ..........................13

    C.    Under the *Trikona Advisors* Factors, A Stay Is Appropriate ................................15

        1.    Interests of the Plaintiff: Plaintiff Will not be Unduly Prejudiced or Disadvantaged by a Stay ...............15

        2.    Interests of the Defendants: A Stay Will Simplify the Issues in Question and Streamline the Trial ............17

        3.    Interests of the Court, the Public, and Non-Parties: A Stay Will Reduce the Burden of Litigation ...............18

    D.    The Injury-In-Fact Standing Issues In *Spokeo* and *Tyson* May Also Resolve This Case ...................20

    E.    This Case Should Also be Stayed Pending a Ruling in the D.C. Circuit ..............22

    F.    If a Stay is Issued, this Court Should Deny Plaintiff's Certification Motion ........25

CONCLUSION ...............................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*,
  485 F.3d 85 (2d Cir. 2007)...................................................................................11

*Abrams v. Interco, Inc.*,
  719 F.2d 23 (2d Cir. 1983)............................................................................10, 11

*ACA Int'l v. FCC et al.*,
  No. 15-1211 (D.C. Cir. filed July 10, 2015) ..............................................2, 8, 9, 23

*Bais Yaakov of Spring Valley v. ACT, Inc.*,
  798 F.3d 46, 55 (1st Cir. 2015).......................................................................13, 19

*Bank v. Caribbean Cruise Line, Inc.*,
  606 F. App'x 30 (2d Cir. 2015) .........................................................................12

*Board of School Commissioners v. Jacobs*,
  420 U.S. 128 (1975)......................................................................................12, 13

*Boise v. ACE USA, Inc.*,
  No. 15-21264, 2015 WL 4077433 (S.D. Fla. July 6, 2015)...................16, 17, 19, 21

*Bouaphakeo v. Tyson Foods, Inc.*,
  593 F. App'x 578 (8th Cir. 2014) ................................................................... *passim*

*Brunet v. City of Columbus*,
  1 F.3d 390 (6th Cir. 1993) ................................................................................13

*Cabala v. Crowley*,
  736 F.3d 226 (2d Cir. 2013)......................................................................10, 11, 12

*California v. San Pablo & Tulare R.R. Co.*,
  149 U.S. 308 (1893)..........................................................................................11

*Campbell-Ewald, Co. v. Gomez*,
  No. 14-857 (Oct. 14, 2015).........................................................................5, 6, 16

*Chamber of Commerce of the U.S. v. FCC*,
  No. 15-1306 (D.C. Cir. filed Sept. 2, 2015).........................................................9

*Chapman v. First Index, Inc.*,
  796 F.3d 783 (7th Cir. 2015) .........................................................................4, 13

*Charvat v. Nat'l Holdings Corp.*,
No. 14-2205 (S.D. Ohio June 5, 2015), ECF No. 34 ..........................................................16

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
467 U.S. 837 (1984)..........................................................................................................24

*Clark v. State Farm Mut. Auto Ins. Co.*,
590 F.3d 1134 (10th Cir. 2009) ......................................................................................13

*Comer v. Cisneros*,
37 F.3d 775 (2d Cir. 1994)................................................................................................13

*Diamond v. Charles*,
476 U.S. 54 (1986)............................................................................................................11

*Diaz v. First Am. Home Buyers Prot. Corp.*,
732 F.3d 948 (9th Cir. 2013) ..........................................................................................13

*Dominick & Dominick, Inc. v. Investor Servs. & Sav. Corp.*,
No. 18-304, 1990 WL 74547 (S.D.N.Y. May 30, 1990) ..................................................17

*Doyle v. Midland Credit Mgmt.*,
722 F.3d 78 (2d Cir. 2013)........................................................................................10, 11

*Duchene v. Westlake Servs., LLC*,
No. 13-01577, 2015 WL 5947669 (W.D. Pa. Oct. 13, 2015) ..................................16, 17, 21

*Estate of Heiser v. Deutsche Bank Trust Co. Americas*,
No. 11-1608, 2012 WL 2865485 (S.D.N.Y. July 10, 2012)..........................................18, 19

*Etzel v. Hooters of Am., LLC*,
No. 15-01055 (N.D. Ga. June 26, 2015), ECF No. 17....................................................16, 21

*Fauley v. Royal Cain USA Inc.*,
No. 15-02170, 2015 WL 3622542 (N.D. Ill. May 22, 2015)......................................16, 17, 25

*Fulani v. F.C.C.*,
49 F.3d 904 (2d Cir. 1995)...............................................................................................24

*Galati v. Pharmacia & Upjohn Co.*,
No. 10-3899, 2011 WL 2470047 (E.D.N.Y. June 17, 2011) .............................................9

*Geismann v. Zocdoc, Inc.*,
No. 14-3708 (2d Cir.).......................................................................................................12

*Genesis Healthcare Corp. v. Symczyk*,
133 S. Ct. 1523 (2013).....................................................................................................14

*Gensel v. Performant Technologies, Inc.*,
  No. 13-1196, 2015 WL 6158072 (E.D. Wis. Oct. 20, 2015) ............................................2, 24

*Goldstein v. Time Warner New York City Cable Grp.*,
  3 F. Supp. 2d 423 (S.D.N.Y. 1998) ..................................................................................10

*Gomez v. Campbell-Ewald Co.*,
  768 F.3d 871 (9th Cir. 2014) ........................................................................... *passim*

*Gomez v. Campbell-Ewald Co.*,
  805 F. Supp. 2d 923 (C.D. Cal. 2011) ..............................................................................14

*Hillson v. Kelly Servs., Inc.*,
  No. 15-10803, 2015 WL 4488493 (E.D. Mich. July 15, 2015) ...........................................21

*HMT, Inc. v. Bell BCI Co.*,
  No. 06-6193, 2007 WL 295328 (W.D.N.Y. Jan. 30, 2007)................................................10

*In re Literary Works in Elec. Databases Copyright Litig.*,
  No. 00-6049, 2001 WL 204212 (S.D.N.Y. Mar. 1, 2001)......................................................18

*In re Monitronics Int'l, Inc., Tel Consumer Prot. Act Litig.*,
  No. 13md2493 (N.D. W. Va. June 17, 2015) .................................................................16, 21

*Kappel v. Comfort*,
  914 F. Supp. 1056 (S.D.N.Y. 1996)..................................................................................10

*Kirchner v. Shred-It USA, Inc.*,
  No. 14-01437 (E.D. Cal. June 18, 2015), ECF No. 59 .......................................................21

*Klein v. Verizon Comm'ns, Inc.*,
  No. 14-1735 (4th Cir. June 17, 2015), ECF No. 34 .........................................................15

*Klein v. Verizon Comm'ns., Inc.*,
  920 F. Supp. 2d 670 (E.D. Va. 2013) ..............................................................................16

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936)........................................................................................................9, 10

*Larson v. Trans Union, LLC*,
  No. 12-05726, 2015 WL 3945052 (N.D. Cal. June 26, 2015)..............................................21

*Lary v. Rexall Sundown, Inc.*,
  No. 15-601 (2d Cir.).......................................................................................................12

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
  676 F.3d 83 (2d Cir. 2012)..............................................................................................9

*Lucero v. Bureau of Collection Recovery Inc.*,
    639 F.3d 1239 (10th Cir. 2011) ........................................................13

*Matherly v. Gonzales*,
    No. 11-3020, 2013 WL 393335 (E.D.N.C. Jan. 31, 2013) ....................15

*McCauley v. Trans Union, LLC*,
    402 F.3d 340 (2d Cir. 2005).........................................................10, 11

*Mey v. Frontier Comm'ns. Corp.*,
    No. 13-01191, ECF No. 125 (D. Conn. Oct. 2, 2015) ................2, 15, 18

*Mey v. Yellowstone Capital, LLC*,
    No. 15-00854 (S.D.N.Y. June 18, 2015), ECF No. 21 ...........................15

*O'Brien v. Ed Donnelly Enters. Inc.*,
    575 F.3d 567 (6th Cir. 2009) ...........................................................13

*Ofosu v. McElroy*,
    98 F.3d 694 (2d Cir. 1996)................................................................10

*Pitts v. Terrible Herbst, Inc.*,
    653 F.3d 1081 (9th Cir. 2011) .........................................................13

*Prof'l Ass'n for Customer Engagement, Inc. v. FCC*,
    No. 15-2489 (7th Cir. filed July 14, 2015) ...........................................8

*Ramirez v. Trans Union, LLC*,
    No. 12-00632 (N.D. Cal. June 22, 2015), ECF No. 184......................21

*Robins v. Spokeo, Inc.*,
    742 F.3d 409 (9th Cir. 2014) .................................................... *passim*

*Robins v. Spokeo, Inc.*,
    2011 WL 11562151 (C.D. Cal. Sept. 19, 2011) ................................20

*Salvatore v. Microbilt Corp.*,
    No. 14-1848, 2015 WL 5008856 (M.D. Pa. Aug. 20, 2015) ...............21

*Sirius XM Radio, Inc. v. FCC*,
    No. 15-1218 (D.C. Cir. filed July 14, 2015) ........................................8

*Smith v. Microsoft Corp.*,
    297 F.R.D. 464 (S.D. Cal. 2014) .........................................................4

*Sosna v. Iowa*,
    419 U.S. 393 (1975).........................................................................12

*Spokeo, Inc. v. Robins*,
    No. 13-1339 (U.S. May 1, 2014) 2014 WL 1802228 .................................................................6, 7

*Stone v. Sterling Infosystems, Inc.*,
    No. 15-00711, 2015 WL 4602968 (E.D. Cal. July 29, 2015) .................................................21

*Swan v. Stoneman*,
    635 F.2d 97 (2d Cir. 1980)....................................................................................................12

*Syed v. M-I, LLC*,
    No. 14-00742 (E.D. Cal. May 29, 2015), ECF No. 69 .........................................................21

*Tanasi v. New Alliance Bank*,
    786 F.3d 195 (2d Cir. 2015)........................................................................................11, 12, 15

*Trikona Advisors Ltd. v. Kai-Lin Chuang*,
    No. 12-3886, 2013 WL 1182960 (E.D.N.Y. Mar. 20, 2013).............................................10, 15

*Williams v. Elephant Ins. Co.*,
    No. 15-00119 (E.D. Va. May 27, 2015), ECF No. 39 .......................................................16, 21

*Wolf v. Lyft, Inc.*,
    No. 15-01441, 2015 WL 4455965 (N.D. Cal. July 20, 2015) ................................................16

*Yaakov v. Varitronics, LLC*,
    No. 14-5008, 2015 WL 5092501 (D. Minn. Aug. 28, 2015)..................................................16

*Zimmerman v. Bell*,
    800 F.2d 386 (4th Cir. 1986) ...............................................................................................13

**Statutes**

47 U.S.C. § 227, *et. seq.*................................................................................................... *passim*

**Other Authorities**

30 F.C.C.R. at 7972-78, ¶¶ 10-24 .........................................................................8, 22, 23

Fed. R. Civ. P. 23 ...............................................................................................5, 12, 14, 18

Fed. R. Civ. P. 23(b)(3)..........................................................................................................7

Fed. R. Civ. P. 68 ......................................................................................................... *passim*

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act*
    *of 1991*, 30 F.C.C.R. 7961, CG Docket No. 02-278, 2015 WL 4387780 (2015)......................8

Pursuant to this Court's inherent power to manage the causes on its docket, Defendants Intellectual Capital Management, Inc., d/b/a SMS Masterminds ("ICM") and Spendsmart Networks, Inc. ("Spendsmart") (collectively, "Defendants"), by their undersigned counsel, respectfully request that this Court stay all proceedings and place this case in civil suspense pending the United States Supreme Court's review and ruling on three appeals and the D.C. Circuit's review of another appeal that directly relate to the issues in this case.  The rulings have the potential to terminate Plaintiff Matthew Acton's ("Plaintiff") putative class action under the Telephone Consumer Protection Act ("TCPA").

## INTRODUCTION

Plaintiff seeks fixed statutory damages (without actual harm) for each unsolicited text message he purportedly received during the applicable limitations period.  Defendants responded by offering more than full statutory relief to Plaintiff on his individual claims under Rule 68, which Plaintiff did not accept.  Rather than move to dismiss on the issue of mootness and/or Plaintiff's Article III standing, Defendants bring the instant Motion to Stay.  The United States Supreme Court recently granted *certiorari* in three cases which will likely provide precedent-controlling dispositions of threshold issues in this matter: (1) whether this Court has subject matter jurisdiction to hear this case in light of the Rule 68 offer of judgment rendering it moot; (2) whether Plaintiff has standing to pursue this action given he has not suffered any actual damages or injury in fact; and (3) whether Plaintiff may certify a class with hundreds of members who were not injured and have no legal right to any damages.  *See Gomez v. Campbell-Ewald Co.*, 768 F.3d 871 (9th Cir. 2014) *cert. granted*, 135 S. Ct. 2311 (May 18, 2015) (No. 14-857); *Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014) *cert. granted*, 135 S. Ct. 1892 (Apr. 27, 2015) (No. 13-1339); *Bouaphakeo v. Tyson Foods, Inc.*, 593 F. App'x 578 (8th Cir. 2014), *cert. granted*, 135 S. Ct. 2806 (June 8,

2015) (No. 14-1146).  The Supreme Court's decision in each appeal will directly impact on this case, and could mandate that this action be dismissed in its entirety.  Accordingly, Defendants hereby move for a stay of this case pending the Supreme Court's rulings on these open issues, since continuing the litigation may prove both wasteful and costly—thus damaging Defendant.  *See Mey v. Frontier Comm'ns. Corp.*, No. 13-01191, ECF No. 125 (D. Conn. Oct. 2, 2015) (administratively closing case *sua sponte*, citing identical situation).

Alternatively, Defendants move to stay this action pending multiple appeals in the United States Court of Appeals for the District of Columbia (the "D.C. Circuit Appeals")[1] challenging the validity of the Federal Communications Commission's ("FCC") July 10, 2015 Declaratory Ruling and Order ("2015 TCPA Order"), addressing, among other things, what type of equipment constitutes an "automatic telephone dialing system" ("ATDS") under the TCPA and who is considered a "called party" under the statute.  *See Gensel v. Performant Technologies, Inc.*, No. 13-1196, 2015 WL 6158072 (E.D. Wis. Oct. 20, 2015) (granting stay pending the consolidated appeals from the 2015 TCPA Order).

A stay is appropriate and necessary because it would prevent this Court and the parties from spending significant time and resources litigating this matter—only for the Supreme Court to subsequently decide Plaintiff lacks standing to pursue this action or that this Court does not (and did not) have jurisdiction to hear the case—and will allow this Court the benefit of the D.C. Circuit's guidance as to the meaning of critical terms used in the TCPA.  The stay will be for a limited duration, and will not prejudice any party.  In fact, the Second Circuit Court of Appeals

---

[1] These appeals have been consolidated under *ACA Int'l v. FCC et al.*, No. 15-1211 (D.C. Cir. filed July 10, 2015).

and district courts within the Second Circuit have already granted such stays in the same context.
Given the direct impact these appeals will have here, this Court should stay this action.

## FACTS AND BACKGROUND INFORMATION

### A. **Plaintiff's Class Action Complaint**.

On July 7, 2015, Plaintiff filed a Class Action Complaint.[2]  (ECF No. 1 ("Compl.").)
Plaintiff claims Defendant violated the TCPA, 47 U.S.C. § 227, by transmitting allegedly
unsolicited text messages at the behest of Muscle Maker Franchising ("Muscle Maker"), a
restaurant chain, and MyNYRewards, its marketing partner.  (Compl., ¶¶ 2-3, 22.)  Specifically,
Plaintiff alleges that on or about November 17, 2013, Defendants sent, or caused to be sent, a text
message to Plaintiff's cellular telephone.  (*Id.* at ¶ 23.)  The text message advertised Muscle
Marker's Loyalty Rewards Club, and identified MyNYRewards.com as the sender of the text
message.  (*Id.* at ¶ 24.)  Plaintiff claims that he was not a member of Muscle Maker's Loyalty
Rewards Club and did not authorize Muscle Maker, MyNYRewards, or Defendants to send him a
text message.  (*Id.* at ¶ 25.)  Plaintiff received a total of eleven text messages concerning Muscle
Maker and MyNYRewards but took no affirmative steps to stop the messages.  (*Id.* at ¶ 26;
Declaration of Matthew Acton ("Acton Decl."), ECF No. 1-4, ¶ 3.)

Plaintiff alleges that Defendants provide a kiosk to businesses, whereby patrons may input
their phone numbers to enroll in text message marketing campaigns.  (Compl., ¶ 30.)  Plaintiff also
alleges that Defendants do not know whether a phone number inputted in a kiosk was entered by
the subscriber of the cellular phone number, such that Defendants lack the ability to discern

---

[2] Plaintiff jointly filed the Complaint with Peter Marchelos.  (Compl.)  Defendants offered judgment to be
entered in favor of Plaintiff and Marchelos on September 11, 2015.  (ECF No. 22-1.)  Marchelos accepted
Defendants' offer on September 25, 2015, but Plaintiff did not accept the offer.  (*Id.*)

whether a phone number is backed by the subscriber's consent to receive text messages.  (*Id.* at ¶¶ 31-33.)  Plaintiff contends that the messages are sent using an ATDS.  (*Id.* at ¶¶ 36-39.)

**B.**     **Defendants Served a Rule 68 Offer of Judgment on Plaintiff**.

On September 11, 2015, in reliance on Plaintiff's claims, Defendants served Plaintiff with an offer of judgment (the "Offer of Judgment") pursuant to Federal Rule of Civil Procedure 68. (ECF No. 22-1)  Defendants offered to compensate Plaintiff for each of the eleven text messages he believes were sent in violation of the TCPA during the limitations period.  (*Id.*)  Specifically, Defendants offered to pay Plaintiff $16,511.00—representing $1,501.00 per text message that Plaintiff contends Defendants transmitted on behalf of Muscle Maker and MyNYRewards to Plaintiff.  (*Id.* at ¶ 1.)  As such, the Offer of Judgment represents—***and exceeds***—all possible recovery Plaintiff could hope to receive under the TCPA.  (*Id.*)  The Offer of Judgment also includes an offer to pay reasonable costs accrued by Plaintiff and an injunction preventing Defendants from sending text messages to Plaintiff in violation of the TCPA.[3]  (*Id.* at ¶¶ 1, 3.)

Accordingly, the Offer of Judgment fully satisfies all of Plaintiff's claims against Defendants.  Plaintiff did not accept the Offer of Judgment.

**C.**     **Relevant Pending Litigation**.

**1.**     **The Court Grants *Certiorari* in Three Appeals Poised to End this Case**.

**a.**     ***Campbell-Ewald***.

On May 18, 2015, in the wake of a Circuit split as to the effect of a Rule 68 offer, the U.S. Supreme Court granted *certiorari* in *Campbell-Ewald* to address (1) "[w]hether a case becomes

---

[3]  The Offer of Judgment does not include an offer to pay Plaintiff's attorneys' fees, as the TCPA does not provide for recovery of attorneys' fees.  *See generally* 47 U.S.C. § 227, *et seq.*; *Chapman v. First Index, Inc.*, 796 F. 3d 783, 786 (7th Cir. 2015) (recognizing that "§ 227 is not a fee-shifting statute"); *see also Smith v. Microsoft Corp.*, 297 F.R.D. 464, 469 (S.D. Cal. 2014) (noting that "the TCPA, unlike many consumer protection statutes, does not provide for attorneys' fees").

moot, and thus beyond the judicial power of Article III, when the plaintiff receives an offer of complete relief on his claim"; and (2) "[w]hether the answer to the first question is any different when the plaintiff has asserted a class claim under Federal Rule of Civil Procedure 23, but receives an offer of complete relief before any class is certified."  Pet. For Writ of Cert. at i, *Campbell-Ewald*, 2015 WL 241891, at *i.  The questions before the high Court are the same issues before this Court in light of Plaintiff's failure to accept the Offer of Judgment.

The Supreme Court held oral argument in *Campbell-Ewald* on October 14, 2015, during which the Justices expressed doubt that a plaintiff has standing to carry on a class action after he rejects an offer of judgment or allows it to expire.  For example, Chief Justice Roberts questioned, "If you're getting everything you want, what is the case or controversy?  What is the live dispute in which you have a personal stake to the terms we use under Article III? . . . You won't take 'yes' for an answer."  Transcript of Oral Argument at 30:19-22, 35:19-20, *Campbell-Ewald, Co. v. Gomez,* No. 14-857 (Oct. 14, 2015) (Request for Judicial Notice ("RJN"), Ex. A.)  Justice Kennedy embraced this concern, concluding that "there has to be adversity, as the Chief Justice mentioned in his first question.  And if $10,000 is in the bank and he's been injured in the . . . sum of $10,000, there's no adversity."  *Id.* at 34:8-11.  Similarly, Justice Alito asked: "Suppose [the defendant] right now were to take a big stash of cash out of his briefcase, or a certified check and present that to you.  Would there be any case left then?"  *Id.* at 31:11-14.  And Justice Scalia characterized the problem as a lack of adversity: "So even though the parties have no adverseness at all and they all agree on what the outcome should be, . . . we want a court to go into this matter which we've all agreed on because we want a judgment?  Is . . . that . . . the Article III adverseness requirement? . . . I think it's remarkable."  *Id.* at 61:15-25.

Even Justice Breyer signaled his belief that a plaintiff should not be able to maintain a class action after a defendant offers judgment.  Justice Breyer questioned whether full payment vitiates a controversy, explaining, "I'm being practical. . . And the practical thing is that the defendant wants to pay off the plaintiff by giving him everything he wants." *Id.* at 49:23-50:3.  Justice Breyer noted that, in that situation, "[t]he only thing that's left is, you'd like, says the plaintiff, class certification, or at least the lawyer would." *Id.* at 50:18-20.  Justice Breyer concluded by emphasizing how dubious he found the idea that an attorney could maintain a class action when his client had received everything he asked for: "Even though there's been a certified check tendered to the plaintiff and a judgment has been entered saying the case is over because he's got everything he wants?" *Id.* at 51:1-4.

### b.  *Spokeo and Tyson*.

In addition to the *Campbell-Ewald* appeal, the Supreme Court will also address whether persons who sustained no injury in fact have standing to participate in a class action.  In *Spokeo*, the Ninth Circuit held that a plaintiff need not plead actual harm to pursue a claim for statutory damages under the FCRA and, in turn, certified a FCRA statutory damages class.  The Supreme Court granted the petition for writ of *certiorari* to address "[w]hether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute."  Pet. For Writ of Cert. at i, *Spokeo, Inc. v. Robins*, No. 13-1339 (U.S. May 1, 2014) 2014 WL 1802228, at *i.  If the Court holds a plaintiff must suffer actual damages to seek fixed statutory damages under a federal statute, then Defendants will move for summary judgment on Plaintiff's lack of standing.

The Court held oral argument in *Robins* on November 2, 2015, during which the Court signaled that plaintiffs need to demonstrate actual harm from a violation of a statute, rather than

just the violation of the statute itself, to maintain a federal court action.  Justice Scalia emphasized that a plaintiff needs to demonstrate more than just a violation of what Congress has said is a legal right, lest the Court risk a ruling that would lead to an absurd result.  For example, Justice Scalia posited that, under the plaintiff's interpretation, the failure of a credit reporting agency to provide a toll free number, as required by the FCRA, would allow anyone to sue, even if it did not affect them at all.  Transcript of Oral Argument at 25:19-26:3, *Spokeo, Inc. v. Robins*, No. 13-1339 (Nov. 2, 2015) (RJN, Ex. B.)  Chief Justice Roberts agreed, characterizing the plaintiff's argument as rooted in an "injury in law" rather than a concrete injury in fact.  *Id.* at 32:11-15.

The Supreme Court also granted the petition for a writ of *certiorari* in *Tyson*.  As pertinent here, the Supreme Court will address "[w]hether a class action may be certified or maintained under Rule 23(b)(3) . . . when the class contains hundreds of members who were not injured and have no legal right to any damages."  Questions Presented, *Tyson*, 135 S. Ct. 2806.  As explained by Judge Beam of the Eighth Circuit, dissenting from the denial of panel rehearing and rehearing *en banc*, "only those putative members with provable damages" may be included within a class. *Tyson*, 593 F. App'x at 584 (Beam, J., dissenting).  If these persons cannot be ascertained through competent evidence, certification is entirely improper.  *See id.*  Oral argument in *Tyson* is scheduled for November 10, 2015.

Put simply, the Supreme Court's decision to grant review and its questions during oral argument in *Campbell-Ewald* suggests that the Court doubts a plaintiff can maintain a class action—or any action—once he has been offered complete relief.  The oral argument in *Spokeo* and the Court's decision to grant review in *Tyson* similarly suggest that the Court has serious concerns with broad class certification orders that include persons who were not affected in a practical way by the particular practice challenged.  Accordingly, the present litigation should be

stayed so this Court has the benefit of the Supreme Court's guidance before potentially unnecessary expense is incurred.

### 2.   The 2015 TCPA Order and the Consolidated Appeal in the D.C. Circuit.

On July 10, 2015, the FCC issued the 2015 TCPA Order, responding to numerous requests for clarification with respect to elements of the TCPA, including the definition of an ATDS.  *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C.R. 7961, CG Docket No. 02-278, 2015 WL 4387780 (2015).   The TCPA defines an ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1). The 2015 TCPA Order includes a "broad interpretation" of "capacity" to include equipment with the "potential ability"—rather than simply the "present ability"—to act as an ATDS.  30 F.C.C.R. at 7972-78, ¶¶ 10-24.

While the TCPA itself does not define the term "called party," in the 2015 TCPA Order, the FCC found "that the 'called party' is the subscriber, *i.e.*, the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan."  *Id.* at 8000-01, ¶ 73.  As a result, when a caller places a call to or texts an intended recipient, the caller is liable if the current subscriber of the phone line does not wish to receive communications, even if the caller had "a reasonable basis to believe they have valid consent to make the call."  *Id.* at 7999-8000, ¶ 72.

The D.C. Circuit Appeals were filed shortly after the 2015 TCPA Order was issued.  The D.C. Circuit Appeals challenge the validity of the 2015 TCPA Order, including the definition of an ATDS and the meaning of "called party."  *See, e.g., ACA Int'l*, No. 15-1211; *Sirius XM Radio, Inc. v. FCC*, No. 15-1218 (D.C. Cir. filed July 14, 2015); *Prof'l Ass'n for Customer Engagement,*

*Inc. v. FCC*, No. 15-2489 (7th Cir. filed July 14, 2015), *transferred* (D.C. Cir. July 28, 2015);

*Chamber of Commerce of the U.S. v. FCC*, No. 15-1306 (D.C. Cir. filed Sept. 2, 2015).

The D.C. Circuit Appeals are based in part on the contention that the FCC's treatment of "capacity" within the definition of an ATDS under the TCPA is "arbitrary, capricious, and an abuse of discretion, and results in an approach that does not comport with a caller's constitutional rights of due process and freedom of speech and that disregards the applicable statute." *ACA Int'l*, Amended Petition for Review, at *2-3. The petitioners specifically challenge the FCC's authority to render such a definition, arguing that the FCC's "treatment of predictive dialers is not in accordance with law, and exceed[s] the [FCC's] statutory authority, in that it expands the statutory definition of an [ATDS] under the [TCPA] beyond the definition that Congress enacted." *Id.* In addition, the petitioners request that the term "called party" be defined as the "call's intended recipient," as opposed to the "subscriber," as presently defined in the 2015 TCPA Order. *Id.* at *5. Because liability in this case hinges on the meaning of these critical terms, the present litigation should be stayed so this Court has the benefit of any ruling issued in the D.C. Circuit Appeals.

## ARGUMENT

### A.    This Court has Authority to Grant Stays Pending Appellate Court Rulings.

Courts have inherent power to manage their dockets and may use this power to stay proceedings. *Galati v. Pharmacia & Upjohn Co.*, No. 10-3899, 2011 WL 2470047, at *1 (E.D.N.Y. June 17, 2011) (Seybert, J.) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)); *see also Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254. "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Louis Vuitton*,

676 F. 3d at 97 (citing *Landis*, 299 U.S. at 254-55); *see also Ofosu v. McElroy*, 98 F.3d 694, 699 (2d Cir. 1996) ("A request for a stay is an appeal to equity").

The factors considered in determining whether to stay a civil action are: (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *Trikona Advisors Ltd. v. Kai-Lin Chuang*, No. 12-3886, 2013 WL 1182960, at *3 (E.D.N.Y. Mar. 20, 2013) (quoting *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996)).   In connection with several of these factors, courts in the Second Circuit have also considered what stage the litigation is in when ruling on such motions. *HMT, Inc. v. Bell BCI Co.*, No. 06-6193, 2007 WL 295328, at *2 (W.D.N.Y. Jan. 30, 2007) (considering whether "substantial amounts of time and expense have been invested in preparation by the parties and the Court to the extent that the case is nearly ready for trial" or whether a "case is in its very early stages of preparation").   Moreover, in exercising this broad authority, a district court may "enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Goldstein v. Time Warner New York City Cable Grp.*, 3 F. Supp. 2d 423, 437-38 (S.D.N.Y. 1998).

## B.    *Campbell-Ewald* Will Resolve the Mootness Issue.

A threshold issue before this Court is whether a Rule 68 offer made before class certification moots individual and class claims.  A plaintiff is not entitled to continue litigating "if a defendant consents to judgment in the maximum amount for which the defendant could be held liable" because "there is no justification for taking the time of the court and the defendant in the pursuit of . . . claims which [the] defendant has more than satisfied." *Doyle v. Midland Credit Mgmt.*, 722 F.3d 78, 80 (2d Cir. 2013) (quoting *Abrams v. Interco, Inc.*, 719 F.2d 23, 32 (2d Cir. 1983)); *see also Cabala v. Crowley*, 736 F.3d 226, 228 & n.2 (2d Cir. 2013); *McCauley v. Trans*

*Union, LLC*, 402 F.3d 340, 341-42 (2d Cir. 2005).  The fact that a plaintiff refuses an offer of complete relief, or that his attorneys want to keep litigating, is irrelevant.  *See Doyle*, 722 F. 3d at 81; *see also California v. San Pablo & Tulare R.R. Co.*, 149 U.S. 308, 313-314 (1893) (notwithstanding plaintiff's rejection of complete relief, "the cause of action has ceased to exist").

To be sure, Article III allows a party to seek a remedy for the claimed violation of its own substantive legal right.  But it does not allow a party to pursue a legal ruling for its own sake.  *See, e.g., San Pablo*, 149 U.S. at 313–314; *Abrams*, 719 F. 2d at 33 n.9 (Plaintiff is not entitled "to pursue litigation in which he no longer has an interest merely because this could benefit others"); *Diamond v. Charles*, 476 U.S. 54, 62 (1986) ("The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's requirements").  As a result, the Second Circuit has concluded that when a defendant offers complete relief, "the typically proper disposition in such a situation is for the district court to enter judgment against the defendant for the proffered amount and to direct payment to the plaintiff consistent with the offer." *Cabala*, 736 F. 3d at 228 (citing *McCauley*, 402 F. 3d at 342).  Once judgment is entered, the plaintiff's claim is moot and "the controversy is resolved such that the court lacks further jurisdiction." *Id.*  Indeed, at that point, "[t]here is no issue of practical importance for the court to adjudicate." *ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F. 3d 85, 94 (2d Cir. 2007).

Recently, the Second Circuit issued two decisions which confirm that a rejected or expired offer of complete relief moots a plaintiff's claims.  In *Tanasi v. New Alliance Bank*, 786 F. 3d 195 (2d Cir. 2015), *as amended* (May 21, 2015), the Second Circuit relied on *Cabala* in observing that a court should decline to enter judgment in response to a rejected offer of judgment *only* in the event "it does not provide complete relief." *Id.* (citing *Cabala*, 736 F. 3d at 230).  The court reaffirmed that "*after* judgment is entered, the plaintiff's individual claims will become moot for

purposes of Article III." *Id.* (emphasis in original).  And in *Bank v. Caribbean Cruise Line, Inc.*, 606 F. App'x 30 (2d Cir. 2015), the Second Circuit relied on *Tanasi* and *Cabala* in affirming dismissal of a putative class action for lack of subject matter jurisdiction where the district court entered judgment in favor of the named plaintiff over his objection in accordance with the defendant's offer of judgment.  In so doing, the Court observed that "it was not the unaccepted Rule 68 offer that rendered [plaintiff's] claims moot," but rather "the district court's entry of a judgment providing him with complete relief."  *Id.* at 31.

Thus, there can be no doubt that under the law of this Circuit, Plaintiff's failure to accept Defendants' Offer of Judgment will ultimately render his claims moot.  The only question, therefore, is the question the Second Circuit declined to reach in *Tanasi*—whether putative class action claims under Rule 23 provide an independent basis for justiciability after a plaintiff's individual claims are rendered moot.  *Tanasi*, 786 F. 3d at 201.  The Second Circuit is currently considering two appeals dealing with this precise issue.  *See Geismann v. Zocdoc, Inc.*, No. 14-3708 (2d Cir.) (argued June 5, 2015); *Lary v. Rexall Sundown, Inc.*, No. 15-601 (2d Cir.) (argument set for Dec. 10, 2015).  In the meantime, the law remains that a putative class action is moot when the claims of the named plaintiff become moot prior to class certification.  *Sosna v. Iowa*, 419 U.S. 393, 402 (1975) (observing that in order to satisfy Article III in a class action, there must be a named plaintiff who has the requisite personal stake "at the time the complaint is filed, and at the time the class action is certified by the District Court pursuant to Rule 23"); *see also Swan v. Stoneman*, 635 F. 2d 97, 102 n.6 (2d Cir. 1980) ("As a general rule, a class action cannot be maintained unless there is a named plaintiff with a live controversy both at the time the complaint is filed and at the time the class is certified").  As a result, in *Board of School Commissioners v. Jacobs*, 420 U.S. 128, 129-30 (1975), the Court held that the case was moot because a class had

not been certified and the claims of the named plaintiff students were moot because they had graduated and would not be subject to the school rules they had challenged as unconstitutional. Moreover, the Second Circuit likewise has held that "in general, if the claims of the named plaintiffs become moot prior to class certification, the entire action becomes moot." *Comer v. Cisneros*, 37 F. 3d 775, 798 (2d Cir. 1994) (citing *Jacobs*, 420 U.S. 128 at 129-30 (1975)).

There is disagreement, however, among the circuits regarding whether an unaccepted offer of full relief before certification moots a class action.[4]  This is the very issue before the Supreme Court in *Campbell-Ewald*.  Specifically, if the Supreme Court confirms a Rule 68 offer of judgment made before a class is certified moots an individual claim and/or the putative class action, this case too will have to be dismissed as moot.

### 1.    The Facts of This Case are Identical to *Campbell-Ewald*.

The instant facts are almost identical to *Campbell-Ewald*, which also involves TCPA claims.  Pet. For Writ of Cert. at 2, *Campbell-Ewald, Co.*, No. 14-857.  Campbell-Ewald sent recruiting text messages on behalf of the U.S. Navy.  *Id.*  Gomez sued Campbell-Ewald under the TCPA and sought to represent a nationwide class of "unconsenting recipients of the Navy's recruiting messages."  *Id.* at 5.  Before a class was certified, Campbell-Ewald made an offer of judgment to Gomez.  *Id.*  The district court denied Campbell-Ewald's subsequent motion to

---

[4]  *Compare Clark v. State Farm Mut. Auto Ins. Co.*, 590 F. 3d 1134, 1138 (10th Cir. 2009) ("suit brought as a class action must be dismissed for mootness when the personal claims of the named plaintiffs are satisfied and no class has been properly certified."), *Lucero v. Bureau of Collection Recovery Inc.*, 639 F.3d 1239, 1243 (10th Cir. 2011) (same); *O'Brien v. Ed Donnelly Enters. Inc.*, 575 F.3d 567, 574 (6th Cir. 2009), *Brunet v. City of Columbus*, 1 F. 3d 390, 399 (6th Cir. 1993) ("Where the named plaintiff's claim becomes moot *before* certification, dismissal of the action is required.") (emphasis in original) *and Zimmerman v. Bell*, 800 F. 2d 386, 390 (4th Cir. 1986) (no case or controversy where defendants offered full amount because "federal courts do not sit simply to bestow vindication in a vacuum") *with Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081 (9th Cir. 2011), *Diaz v. First Am. Home Buyers Prot. Corp.*, 732 F. 3d 948 (9th Cir. 2013), *Chapman*, 796 F. 3d at 787, *and Bais Yaakov of Spring Valley v. ACT, Inc.*, 798 F. 3d 46, 55 (1st Cir. 2015).

dismiss the case for lack of subject matter jurisdiction.  *Id.* at 6; *Gomez v. Campbell-Ewald Co.*, 805 F. Supp. 2d 923, 930 (C.D. Cal. 2011).  The case was subsequently dismissed at summary judgment, and Gomez appealed.  Pet. For Writ of Cert. at 7, *Campbell-Ewald, Co.*, No. 14-857.

A month later, the Supreme Court decided *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013), which held an unaccepted rule 68 offer mooted plaintiff's individual ***and collective*** FLSA claims.  In response, Campbell-Ewald moved to the appeal for lack of jurisdiction. The Ninth Circuit denied the motion and held the case was not irreconcilable with *Genesis*, as *Genesis* did not apply to class claims under Rule 23.  *See Campbell-Ewald*, 768 F. 3d at 876.

Campbell-Ewald subsequently filed a petition for *writ of certiorari* to the Supreme Court presenting the questions of (1) "whether a case becomes moot, and thus beyond the judicial power of Article III, when the plaintiff receives an offer of complete relief on his claim" and (2) "[w]hether the answer to the first question is any different when the plaintiff has asserted a class claim under Federal Rule of Civil Procedure 23, but receives an offer of complete relief before any class is certified" regardless of whether a motion for certification is on file.[5]  Pet. For Writ of Cert. at i, *Campbell-Ewald, Co.*, No. 14-857.  Campbell-Ewald asks the Court to resolve the split regarding the mootness issue, and highlights how the TCPA has "***become an extortionist weapon in the hands of class action attorneys seeking to extract lucrative attorneys' fees for class-wide settlements***."  *See* Pet. For Writ of Cert. at 2, *Campbell-Ewald, Co.*, No. 14-857 (emphasis added).

---

[5]  Although Plaintiff filed a "placeholder" motion for class certification along with his Complaint, this is not significant.  As acknowledged by both petitioner and respondent in *Campbell-Ewald*, the issue before the Court does not turn on the timing of a class certification motion.  Rather, Campbell-Ewald advocated for a broader rule—*i.e.* that an offer of judgment moots class claims if made ***before certification***.  *See* Respondent's Br. in Opp. at 19-20; Cert. Petition at i.  Critically, the Court has not granted certification here or even set a briefing schedule for Plaintiff's class certification motion.

The Supreme Court's *Campbell-Ewald* ruling will be dispositive of Plaintiff's standing if it confirms a Rule 68 offer made prior to a class being certified moots individual/class claims. As in *Campbell-Ewald*, Defendants have also offered Plaintiff more than the full relief requested.

### C.    Under the *Trikona Advisors* Factors, A Stay Is Appropriate.

Applying the factors outlined by this Court in *Trikona Advisors*, a stay of the instant litigation is appropriate. Here, the interests of the litigants, the court, interested parties, and the public weigh in favor of staying the proceedings pending outcome of *Campbell-Ewald*.

### 1.    Interests of the Plaintiff: Plaintiff Will not be Unduly Prejudiced or Disadvantaged by a Stay.

*First*, Plaintiff will not be unduly prejudiced or tactically disadvantaged by a stay. As an initial matter, Defendants only request a stay sufficient to allow the Supreme Court to decide *Campbell-Ewald* in the coming Term. Any stay would be of limited duration as the Supreme Court already heard oral and can be expected to issue a ruling soon.[6] Recognizing both the need for, and timeliness of, the Supreme Court's guidance, the Second Circuit granted a stay so that the appellant in *Tanasi* could file a petition for writ of *certiorari* on the same issues being considered in *Campbell-Ewald*. *Tanasi*, No. 14-1389 (2d Cir. June 30, 2015), ECF No. 90. Two other district courts in this circuit have also stayed TCPA class actions pending the Supreme Court's decision in *Campbell-Ewald*. *See Mey v. Yellowstone Capital, LLC*, No. 15-00854 (S.D.N.Y. June 18, 2015), ECF No. 21; *Frontier Comm'ns.*, No. 13-01191, ECF Nos. 117-18, 25 (administratively closing case following a *sua sponte* telephonic status conference discussing *Campbell-Ewald*).[7]

---

[6] Regardless of the timing of the Supreme Court's ruling, however, delay alone is insufficient to prevent a stay. *See Matherly v. Gonzales*, No. 11-3020, 2013 WL 393335, at *2 (E.D.N.C. Jan. 31, 2013) (reasoning that "even if the delay could be characterized as one that is prejudicial to plaintiff, there are considerations of judicial economy that outweigh any prejudice that might result.").

[7] The Second Circuit's practice of granting a stay pending *Campbell-Ewald* is consistent with that of federal courts throughout the country. For example, the Fourth Circuit stayed its review of the Rule 68 mootness question, otherwise set for oral argument this summer, pending *Campbell-Ewald*. Order at 2, *Klein v.*

In granting a stay in a TCPA class action based on *Campbell-Ewald*, one court noted:

> Defendant's motion to stay this case pending the Supreme Court's decision in *Campbell-Ewald Company v. Gomez* is granted.  It is not clear that the Supreme Court decision will decide whether the offer of judgment in this case renders this case moot… It is possible that the Supreme Court will reach the issue, however, and I see no prejudice in holding this case in abeyance.  Discovery is expensive and in my experience, it is mostly the attorneys who benefit from these cases.  While plaintiff's counsel says documentation will be lost, I note that the case was not filed until nearly two years after plaintiff received the fax in question, indicating that plaintiff was not concerned with delay.  In addition, defense counsel represent that they have taken all steps to preserve the information regarding the recipients of the fax.  Nor am I at all sure that any class should be expanded to include everyone sent any fax by defendants within the statute of limitations. . . .

*Fauley v. Royal Cain USA Inc.*, No. 15-02170, 2015 WL 3622542 (N.D. Ill. May 22, 2015)

Here, as in *Fauley*, there is also no concern over lost evidence, or that a stay will create evidentiary issues.  Indeed, Plaintiff believes "[s]ufficient discovery already exists to support Plaintiff's motion for conditional certification."  (ECF No. 19, at *1; *see also id.* at *2-3 (Plaintiffs' motion is fully briefed and . . . the underlying facts and issues have been thoroughly vetted . . . .")) Remaining discovery consists mostly of class discovery, which is massively expensive, and the number of potential witnesses is limited to Plaintiff, a handful of Defendants' representatives, Muscle Maker and MyNYRewards.  In addition, Defendants have, and will continue to, take all

---

*Verizon Comm'ns, Inc.*, No. 14-1735 (4th Cir. June 17, 2015), ECF No. 34; *see also Klein v. Verizon Comm'ns., Inc.*, 920 F. Supp. 2d 670, 679 (E.D. Va. 2013) (holding that an unaccepted offer of judgment before certification does not moot putative class claims).  And at least nine putative TCPA class actions have been stayed by district courts in recognition of *Campbell-Ewald*'s dispositive effect. *See Duchene v. Westlake Servs., LLC*, No. 13-01577, 2015 WL 5947669, at *4 (W.D. Pa. Oct. 13, 2015); *Yaakov v. Varitronics, LLC*, No. 14-5008, 2015 WL 5092501, at *3-4 (D. Minn. Aug. 28, 2015); *Wolf v. Lyft, Inc.*, No. 15-01441, 2015 WL 4455965, at *3 (N.D. Cal. July 20, 2015); *Boise v. ACE USA, Inc.*, No. 15-21264, 2015 WL 4077433, at *5-6 (S.D. Fla. July 6, 2015); Minute Order, *Etzel v. Hooters of Am., LLC*, No. 15-01055 (N.D. Ga. June 26, 2015), ECF No. 17; Order Staying Case at 1-2, *In re Monitronics Int'l, Inc., Tel Consumer Prot. Act Litig.*, No. 13md2493 (N.D. W. Va. June 17, 2015), ECF No. 459; Order at 1, *Williams v. Elephant Ins. Co.*, No. 15-00119 (E.D. Va. May 27, 2015), ECF No. 39; Minute Order, *Fauley*, 2015 WL 3622542; *see also* Order at 1-2, *Charvat v. Nat'l Holdings Corp.*, No. 14-2205 (S.D. Ohio June 5, 2015), ECF No. 34 (staying *sua sponte* a TCPA matter after certifying to the Sixth Circuit the same questions raised in *Campbell-Ewald*).

reasonable efforts to preserve its own documents relating to this case, and issued litigation hold notices to all third parties with potentially discoverable evidence.

It is well-settled that transferring a matter to the suspense calendar has no legal consequence other than to remove that case from the district court's active docket. *Dominick & Dominick, Inc. v. Investor Servs. & Sav. Corp.*, No. 18-304, 1990 WL 74547, at *2 (S.D.N.Y. May 30, 1990) (a stay "merely remove[s] the action from [the] active docket, subject to re-opening"). Because a stay would be limited in temporal scope, and because Plaintiff will not suffer any harm whatsoever in the interim,[8] this factor weighs heavily in favor of a stay.

### 2.   Interests of the Defendants: A Stay Will Simplify the Issues in Question and Streamline the Trial.

*Second*, a stay may prevent the high cost of class discovery to Defendants, and will undoubtedly simplify the issues in question, by determining whether there is even a valid basis for this case to continue in light of Defendants' Offer of Judgment. There would be no need for a trial if this case was, in fact, rendered moot and Defendants successfully moved to dismiss on that basis.

Conversely, all of the time, expense and resources required to engage in discovery, mediation and to litigate class certification could potentially be for naught if the Supreme Court rules in favor of Campbell-Ewald with respect to the mootness issue. "It is of no benefit to either party to incur substantial costs litigating an issue that the Supreme Court may well determine is not actionable in the course of these proceedings." *Duchene*, 2015 WL 5947669, at *3; *see also Boise*, 2015 WL 4077433, at *5 ("[*Campbell-Ewald*] may conclusively determine whether this Court has the subject matter jurisdiction to hear Plaintiff's claims at all. Therefore . . . the

---

[8] This is not a case where Plaintiff seeks or requires immediate relief. As in *Fauley*, Plaintiff waited almost two years from the date of the first text message to file suit. (Compl.) The relief Plaintiff seeks (statutory damages) will also still be available even if the Supreme Court determines a Rule 68 offer of judgment does not moot an individual or class claim.

significant 'time, expense, and resources required to litigate this case on the merits will be for naught if the Supreme Court rules . . . that Boise's claims are moot.'  This Court may exercise its discretion to avoid such unnecessary expenditures of time and resources by ordering a stay of proceedings.") (internal citation omitted).  A stay resolves all such concerns.

Likewise, because this case is still in its nascent stage, the parties can still avoid wasting further resources if a stay is entered.  Only Plaintiff has propounded written discovery requests, and no depositions have been taken.  This factor thus weighs heavily in favor of a stay.

### 3. Interests of the Court, the Public, and Non-Parties: A Stay Will Reduce the Burden of Litigation.

*Third*, the Supreme Court's decision has the potential to drastically reduce the burden of litigation on the Court.  In fact, the *Campbell-Ewald* decision could render this case entirely moot—which would eliminate the burden altogether, save for a motion to dismiss.  Courts have granted stays on this basis.  *See Frontier Comm'ns*, No. 13-01191, ECF. No. 125 (administratively closing case *sua sponte* pending *Campbell-Ewald* to determine "whether a case becomes moot, and thus beyond the judicial power of Article III, when the plaintiff has asserted a class claim under Federal Rule of Civil Procedure 23, but receives an offer of complete relief before any class is certified").  And, where a pending Supreme Court or appellate court decision would be dispositive of the litigation, New York federal courts find the factors to weigh in favor of staying proceedings.  *See, e.g., Estate of Heiser v. Deutsche Bank Trust Co. Americas*, No. 11-1608, 2012 WL 2865487, at *5 (S.D.N.Y. July 10, 2012) *aff'd*, 2012 WL 5039065 (S.D.N.Y. Oct. 17, 2012) ("In recognition of the fact that the Second Circuit will likely be ruling on legal issues potentially dispositive in this case, it is in the best interest of this court to await the decision in the consolidated . . . appeals.  Failure to do so could well lead to unnecessary litigation that is time-consuming for this court, as well as for any third parties that might be joined in this turnover proceeding."); *In re*

*Literary Works in Elec. Databases Copyright Litig.*, No. 00-6049, 2001 WL 204212, at *3 (S.D.N.Y. Mar. 1, 2001) (granting motion to stay because although "a decision in the [case] before the United States Supreme Court 'may not settle every question of fact and law' before this [c]ourt," "in all likelihood it will settle many and simplify them all.").

*Fourth*, "there is a public interest in judicial economy and efficiency, which will be promoted by a stay of these proceedings [pending *Campbell-Ewald*]." *Boise*, 2015 WL 4077433, at *6.  If this case is not stayed, this Court will be forced to spend significant time and resources litigating a potentially moot case.  This Court should not require the parties to proceed with expensive and burdensome discovery under these circumstances because it could result in a colossal, unnecessary waste of public resources.[9]  *Fifth*, because Defendants sent text messages at Muscle Maker's and MyNYRewards' behest, a stay may prevent unnecessary discovery of non-parties.  Put simply, class discovery should not proceed in the face of such uncertainty as to the viability of Plaintiff's claims.  *See Bais Yaakov*, 2015 WL 4979406, at *8 (lamenting how "[u]ntil the Supreme Court addresses the whole issue of class action pick-offs more comprehensively . . . uncertainty will reign."); *Estate of Heiser*, 2012 WL 5039065, at *5 (concluding "it was in the court's best interest to stay this action pending the resolution of [an] appeal" when an appellate court "will likely be ruling on legal issues potentially dispositive in this case" and "[f]ailure to [grant the stay] could well lead to unnecessary litigation that is time-consuming for this court, as well as for any third parties that might be joined").  As shown, each factor weighs heavily in favor of a granting a stay pending the outcome of the Supreme Court's decision in *Campbell-Ewald*.

---

[9] As is usually the case in class action cases, the burden is on the ***defendant*** to review, analyze and produce voluminous documents in order for the parties to evaluate the merits of plaintiff's claim.

**D.    The Injury-In-Fact Standing Issues In *Spokeo* and *Tyson* May Also Resolve This Case.**

The *Campbell-Ewald* appeal, by itself, is sufficient to warrant a stay of this action. However, *Campbell-Ewald* is only one of the ***three*** Supreme Court appeals that will impact this case.  The Court's decisions in *Spokeo* and *Tyson* will address equally important issues related to Article III standing.

The issue before the Court in *Spokeo* is "[w]hether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute."  Pet. for Cert. at i, *Spokeo*, No. 13-1339.  *Spokeo* involved alleged statutory violations of the FCRA.  There was no alleged actual injury in *Spokeo* and the district court dismissed the case for lack of Article III standing based on the plaintiff's failure to allege any actual or imminent harm.  Pet. for Cert. at 5, *Spokeo*, No. 13-1339; *see Robins v. Spokeo, Inc.*, 2011 WL 11562151, at *1 (C.D. Cal. Sept. 19, 2011).  The Ninth Circuit reversed, and held a bare violation of the FCRA was sufficient to confer Article III standing.  *See Spokeo*, 742 F. 3d at 413. The Ninth Circuit held plaintiff had Article III standing because he alleged a violation of a statutory right even though he did not suffer any actual damages.  *Id*. at 414.

Similarly, in deciding *Tyson*, the Supreme Court will address whether a class containing hundreds of members who suffered no actual injury can properly be certified.   Questions Presented, *Tyson*, 135 S. Ct. 2806.   One court recently recognized that, since one of the questions presented in *Tyson* is "[w]hether a class action may be certified or maintained . . . when the class contains hundreds of members who were not injured and have no legal right to any damages," the "decision in *Spokeo* . . . would bring this issue from the *Tyson* appeal to the forefront of the class

certification determination here, further counseling for issuance of a stay." *Larson v. Trans Union, LLC*, No. 12-05726, 2015 WL 3945052, at *8 (N.D. Cal. June 26, 2015).

This case involves the same issues to be addressed by the Supreme Court in *Spokeo* and *Tyson*—*i.e.*, whether a statutory violation alone is sufficient to confer Article III standing on individual and class-wide levels.  The *Spokeo* and *Tyson* opinions will impact the outcome in this case, including whether Plaintiff has sufficient standing and can proceed with a class action.

Similar to the *Campbell-Ewald* issue, the relevant factors counsel staying this case in light of the Court's pending decision in *Spokeo* and *Tyson*.  If the Supreme Court determines a statutory violation is insufficient to confer Article III standing, then Plaintiff's Complaint must be dismissed because it does not allege an actual injury-in-fact.  Or if the Supreme Court holds that a class may not be certified when the class contains hundreds of members who were not injured and have no legal right to damages, litigation may be limited to Plaintiff alone.  Defendants respectfully request that this Court follow the decisions of at least twelve district courts staying putative class actions given the weight of the prospective decisions in *Spokeo* and *Tyson*.  *See Duchene*, 2015 WL 5947669, at *2 (W.D. Pa. Oct. 13, 2015); *Salvatore v. Microbilt Corp.*, No. 14-1848, 2015 WL 5008856, at *3 (M.D. Pa. Aug. 20, 2015); *Stone v. Sterling Infosystems, Inc.*, No. 15-00711, 2015 WL 4602968, at *3 (E.D. Cal. July 29, 2015); *Hillson v. Kelly Servs., Inc.*, No. 15-10803, 2015 WL 4488493, at *1 (E.D. Mich. July 15, 2015); *Boise*, 2015 WL 4077433, at *5-6; Minute Order, *Etzel*, ECF No. 17; *Larson*, 2015 WL 3945052, at *8; Order at 1, *Ramirez v. Trans Union, LLC*, No. 12-00632 (N.D. Cal. June 22, 2015), ECF No. 184; Stipulation and Order at 1-2, *Kirchner v. Shred-It USA, Inc.*, No. 14-01437 (E.D. Cal. June 18, 2015), ECF No. 59; Order Staying Case at 1-2, *In re Monitronics*, ECF No. 459; Stipulation & Order at 1-2, *Syed v. M-I, LLC*, No. 14-00742 (E.D. Cal. May 29, 2015), ECF No. 69; *Williams*, 2015 WL 3631691, at *1.

Staying the litigation will allow the parties and the Court to avoid the unnecessary costs and expenses to litigate a case that is later determined to be moot.  In addition, any delay would not prejudice Plaintiff or the putative class as they have not suffered any injury-in-fact that requires immediate resolution of their claims.  In light of the relevant factors weighing in favor of a stay, this Court should alternatively order a stay pending the outcomes of *Spokeo* and *Tyson*.

### E.      This Case Should Also be Stayed Pending a Ruling in the D.C. Circuit.

Common sense counsels a stay here, pending resolution of the D.C. Circuit Appeals. Plaintiff alleges that Defendants sent text messages on behalf of Muscle Maker and MyNYRewards to Plaintiff and putative class members allegedly using an ATDS—that is, equipment that "has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator"—without the called party's prior express consent.  47 U.S.C. § 227(a)(1).  The key aspect of this definition—the "capacity to store or produce telephone numbers to be called, using a random or sequential number generator"—has been the subject of considerable debate and litigation.  30 F.C.C.R. at 7968-69, ¶¶ 6-7.

The FCC claims to clarify the meaning of "capacity" with the 2015 TCPA Order. Ostensibly, a piece of equipment has sufficient capacity to quality as an ATDS if it has the present or potential capacity to store or produce numbers to be called using a random generator, but not if it only has the theoretical capacity.  *Id.* at 7971-7979, ¶¶ 10-24.  However, the FCC fails to clearly define what the difference is between the qualifying potential capacity and the disqualifying theoretical capacity.  *Id.*  As a result, the 2015 TCPA Order's "interpretation [of what qualifies as an ATDS] is a bit of a mess."  *Id.* at 8075 (Pai, C., dissenting).  Rather than clarify the definition of "capacity," the 2015 TCPA Order further muddles it, transforming the TCPA, as Commissioner Pai notes, "from a statutory rifle-shot targeting specific companies . . . into an unpredictable

shotgun blast covering virtually all communications devices." *Id.*[10]  As pertinent here, the D.C.

Circuit Appeals directly challenge the FCC's definition and treatment of predictive dialers and the

treatment of "capacity" within the definition of ATDS under the TCPA.  *See ACA Int'l* Amended

Petition for Review, at *2-3.

Plaintiff also alleges that the texts were sent without Plaintiff's prior express consent, even

though his phone number was manually entered at a Muscle Maker kiosk.  While the TCPA does

not apply to calls made with the prior express consent of the "called party," (47 U.S.C. §

227(b)(1)(A)), the FCC recently held that the "called party" is "the subscriber, *i.e.*, the consumer

assigned the telephone number dialed and billed for the call, or the non-subscriber customary user

of a telephone number included in a family or business calling plan."  30 F.C.C.R. at 8000-01, ¶

73.  To the contrary, as Commissioner Pai notes, "[i]nterpreting the term 'called party' to mean

the expected recipient—that is, the party expected to answer the call—is by far the best reading of

the statute."  *Id.* at 8078 (Pai, C., dissenting).[11]  Nevertheless, the 2015 TCPA Order "rejects the

expected-recipient approach and endorses a mishmash interpretation.  According to the *Order*,

callers are subject to strict liability after a single attempted call to number that's been reassigned

to a new subscriber.  Its interpretation is a veritable quagmire of self-contradiction and misplaced

incentives."  *Id.* at 8080.  Because Plaintiff's phone number was manually inputted in a Muscle

Maker kiosk—and Defendants thus believed they had Plaintiff's affirmative consent to receive

---

[10] As FCC Commissioner Michael O'Rielly recently noted, "[t]he only thing that the FCC felt comfortable excluding from the definition [of an ATDS] was a rotary phone.  I'm not joking."  Michael O'Rielly, Commissioner, FCC, Remarks Before the Professional Association for Customer Engagement 2015 TCPA Washington Summit (Sept. 28, 2015) (RJN Ex. C).

[11] Commissioner Michael O'Rielly also recognized that the FCC failed to adopt "the common sense interpretation that a company needs the consent of the intended recipient of the call, as opposed to the person that picked up the phone."  (RJN Ex. C).

text message communications from Muscle Maker—whether the definition of "called party" stands or is overturned by the D.C. Circuit may greatly affect Defendants' liability in this case.

As the dissenting Commissioners suggest, the FCC majority's interpretation of the terms "capacity" and "called party" may contradict the plain language of the statute.  If so, then the FCC's ruling on these issues are not entitled to deference on appeal.  *See, e.g., Fulani v. F.C.C.*, 49 F. 3d 904, 910 (2d Cir. 1995) ("If congressional intent is 'clear,' both the court and the agency 'must give effect to the unambiguously expressed intent of Congress.'  However, 'if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.'") (quoting *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984)).  Crucially, the D.C. Circuit Appeals may be dispositive of the instant case if, for example, the court determines that "called party" means "intended recipient," because Defendants sent text messages on behalf of Muscle Maker and MyNYRewards to Plaintiff with the reasonable good faith belief that Plaintiff had consented to receive text messages by virtue of the fact that the number was entered in a Muscle Maker kiosk.

A decision from the D.C. Circuit will help clarify whether the 2015 TCPA Order's addition to the ATDS definition is valid and lawful, which will simplify and streamline a critical issue in this case.  *See Gensel*, 2015 WL 6158072, at *2 (staying TCPA class action pending clarification of the term "capacity" in the D.C. Circuit Appeals).  Similarly, a different definition of the term "called party" may affect Defendants' liability under the TCPA.  Resolution of the D.C. Circuit Appeals will directly impact critical issues before this Court and the factors support staying this case until the D.C. Circuit Appeals are resolved.

**F.      If a Stay is Issued, this Court Should Deny Plaintiff's Certification Motion**.

Per the procedure laid out in *Fauley*, in the event this Court grants a stay pending the *Campbell-Ewald*, *Spokeo*, *Tyson* appeals, or the D.C. Circuit Appeals, it should also deny Plaintiff's pending "placeholder" motion for class certification, without prejudice.  2015 WL 3622542, at *1 ("Because I am staying this case, I will dismiss plaintiff's motion for class certification without prejudice.").

## CONCLUSION

In the interest of judicial economy, and in order to prevent undue hardship, Defendants respectfully request that this Court enter an Order staying this action pending the outcome of the U.S. Supreme Court's decisions in *Campbell-Ewald*, *Spokeo*, and *Tyson*, and the D.C. Circuit Appeals, and deny Plaintiff's pending motion for class certification.


Dated: November 3, 2015          By:      /s/ Harrison Brown
                                          BLANK ROME LLP
                                          Harrison Brown (Admitted *pro hac vice*)
                                          2029 Century Park East, 6th Floor
                                          Los Angeles, CA 90067
                                          Tel:     424.239.3400
                                          Fax:     424.239.3434
                                          Email:  HBrown@BlankRome.com

                                          Rither Alabre
                                          The Chrysler Building
                                          405 Lexington Avenue
                                          New York, NY 10174
                                          Tel:     212.885.5000
                                          Fax:     212.885.5001
                                          Email:  RAlabre@BlankRome.com

                                          *Attorneys for Defendants Intellectual Capital
                                          Management, Inc., d/b/a SMS Masterminds and
                                          Spendsmart Networks*

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via the Court's

CM/ECF system on this 3rd day of November, 2015, on all counsel or parties of record, as listed

below.

By:     /s/ Harrison Brown
        BLANK ROME LLP
        Harrison Brown (Admitted *pro hac vice*)
        2029 Century Park East, 6th Floor
        Los Angeles, CA 90067
        Tel:     424.239.3400
        Fax:     424.239.3434
        Email:   HBrown@BlankRome.com

Erik H. Langeland
Erik H. Langeland, P.C.
733 3rd Avenue, 15th Floor
New York, NY 10017
Tel:     212.354.6270
Fax:     212.898.9086
Email: elangeland@langelandlaw.com